Joyce W. Lindauer
State Bar No. 21555700
Jeffery M. Veteto
State Bar No. 24098548
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 7** |
| | § | |
| **WALL009 LLC,** | § | **Case No. 20-31133-sgj7** |
| | § | **(Jointly Administered)** |
| **Alleged Debtors.** | § | |

**BRIEF IN SUPPORT OF THE MOTIONS OF ALLEGED DEBTORS TO DISMISS INVOLUNTARY PETITIONS, REQUEST FOR SUBSTITUTION OF REAL PARTY-IN-INTEREST, REQUEST FOR BOND, AND REQUEST FOR AWARD OF FEES, COSTS AND DAMAGES OR IN THE ALTERNATIVE TO ABSTAIN UNDER BANKRUPTCY CODE § 305**

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT .......... 6

II. JURISDICTION AND VENUE .......... 7

III. BACKGROUND .......... 7

IV. RELIEF REQUESTED AND SUPPORT THEREFORE .......... 10

- A. Michael Fu d/b/a Silverland and PIC is the Real Party in Interest and Should be Substituted for the Petitioners .......... 11
- B. The Involuntary Petitions Should be Dismissed Under 11 U.S.C. § 303(b)(1) Because There are an Insufficient Number of Petitioners to Support the Filing. . 12
- C. The Involuntary Petitions Should be Dismissed Under 11 U.S.C. § 303(b)(1) Because the Claims are Subject to Bona Fide Disputes, Contingent, and Disputed .......... 15
- D. This Court Should Dismiss the Involuntary Petitions Under 11 U.S.C. § 303(h) Because the Alleged Debtors are Generally Paying their Respective Debts .......... 16
- E. This Court Should Dismiss the Involuntary Petitions Under 11 U.S.C. § 305(a) Because They are not in the Best Interests of Alleged Debtor and Its Creditors.. 17
- F. An Award of Compensatory and Punitive Damages and Recovery of Attorneys' Fees is Appropriate Because the Involuntary Petitions Were Filed in Bad Faith. 20
  - i. The Court Should Award Costs and Reasonable Attorneys' Fees. .......... 22
  - ii. The Court Also Should Award Compensatory and Punitive Damages Because the Involuntary Petitions Were Filed in Bad Faith. .......... 23
- G. Petitioners Should be Required to Post a Bond. .......... 26
- H. The Court Should Dismiss this Case under the Abstention Provisions of Under 11 U.S.C. § 305(a) .......... 27
- I. The Court Should Dismiss these Cases for Cause under 11 U.S.C. § 707(a).......... 29

V. NOTICE .......... 29

VI. CONCLUSION .......... 30

## TABLE OF AUTHORITIES

**CASES**

*Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc.*, 04 C 8053, 2005 WL 5705113, at *4 (N.D. Ill. Sept. 7, 2005) ... 23
*Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)*, 741 F.3d 651 (5th Cir. 2014) ... 9
*In re 801 S. Wells St. Ltd. P'ship*, 192 B.R. 718 (Bankr. N.D. Ill. 1996) ... 17
*In re 1701 Commerce, LLC*, 477 B.R. 652 (Bankr. N.D. Tex. 2012) ... 18, 22
*In re Alcide*, 450 B.R. 526 (Bankr. E.D. Pa. 2011) ... 10
*In re Allied Riser Commc'ns Corp.*, 283 B.R. 420 (Bankr. N.D. Tex. 2002) ... 21
*In re Amc Inv'rs, LLC*, 406 B.R. 478 (Bankr. D. Del. 2009) ... 17, 18
*In re Axi Indus., Inc.*, 127 B.R. 482 (S.D. Fla. 1991) ... 18
*In re Bates*, 545 B.R. 183 (Bankr. W.D. Tex. 2016) ... 22
*In re Charon*, 94 B.R. 403 (Bankr. E.D. Va. 1988) ... 13
*In re Clean Fuel Techs. II, LLC*, 544 B.R. 591 (Bankr. W.D. Tex. 2016) ... 21
*In re Colonial Ford, Inc.*, 24 B.R. 1014 (Bankr. Utah 1982) ... 17
*In re CorrLine Int'l, LLC*, 516 B.R. 106 (Bankr. S.D. Tex. 2014) ... 17
*In re Dinova*, 212 B.R. 437 (2nd Cir. BAP 1997) ... 28
*In re Ebackpack*, 605 B.R. 126 (Bankr. N.D. Tex. 2019) ... 14, 15
*In re ELRS Loss Mitigation, LLC*, 325 B.R. 604 (Bankr. N.D. Okla. 2005) ... 18
*In re Elsub Corp.*, 66 B.R. 189 (Bankr. D.N.J. 1986) ... 24
*In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328 (3d Cir. 2015) ... 19, 22, 23
*In re Frailey*, 144 B.R. 972 (Bank. W.D. Penn. 1992) ... 16
*In re Funnel Sci. Internet Mktg., LLC*, 551 B.R. 262 (E.D. Tex. 2016) ... 21
*In re Green Hills Dev. Co.*, 741 F.3d 651 (5th Cir. 2014) ... 15
*In re Hunt*, No. 18-7237, 2019 U.S. Dist. LEXIS 24987, at *7-9 (E.D. La. 2019) ... 15
*In re Kass*, 114 B.R. 308 (Bankr. S.D. Fla. 1990) ... 16
*In re Landmark Distribs., Inc.*, 189 B.R. 290 (Bankr. D.N.J. 1995) ... 9, 21
*McMillan v. Maestri (In re McMillan)*, 543 B.R. 808 (Bankr. N.D. Tex. 2016) ... 25
*In re Metrogate, LLC*, Case No. 15-12593, 2017 WL 3150177, at * 13 (Bankr. D. Del. May 26, 2016) ... 22, 25
*In re Mountain Dairies*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007) ... 18, 20
*In re Murray*, 543 B.R. 484 (Bankr. S.D.N.Y. 2016) ... 20
*In re Nar-Jor Enters. Corp.*, 6 B.R. 584 (Bankr. S.D. Fla. 1980) ... 19
*In re Norris*, 114 F.3d 1182, 1997 WL 256808, at *5 (5th Cir. 1997) ... 14
*In re Paper I Partners, L.P.*, 283 B.R. 661 (Bankr. S.D.N.Y. 2002) ... 17
*Pleas Doyle & Assocs. v. James Plaza Joint Venture (In re James Plaza Joint Venture)*, 67 B.R. 445 (Bankr. S.D. Tex. 1986) ... 13
*In re R.N. Salem Corp.*, 29 B.R. 424 (S.D. Ohio 1983) ... 9
*Schmid v. Yorke* (*In re Reid*), 773 F.2d 945 (7th Cir. 1985) ... 10
*In re Silverman*, 230 B.R. 46 (Bankr. D.N.J. 1998) ... 24

*In re Sims*, 994 F.2d 210 (5th Cir. 1993) (quoting *In re Rimell*, 946 F.2d at 1365 (citations omitted)) .... 14
*Sipple v. Atwood (In re Atwood)*, 124 B.R. 402 (S.D. Ga. 1991) .... 12
*In re Skyworks Ventures*, 431 B.R. 573 (Bankr. D.N.J. 2010) .... 24
*In re Smith*, 507 F.3d 64 (2nd Cir. 2007) .... 28
*In re Spade,* 258 B.R. 221 (Bankr. D. Co. 2001) .... 26, 27
*In re St. Marie Dev. Corp*., 334 B.R. 663 (Bankr. D. Mont. 2005) .... 23
*In re Synergistic Techs., Inc.*, 07-31733-SGJ-7, 2007 WL 2264700, at *5 (Bankr. N.D. Tex. Aug. 6, 2007) .... 21
*In re Tichy Elec. Co., Inc.*, 332 B.R. 364 (Bankr. N.D. Iowa 2005) .... 12, 22, 23
*In re TRED Holdings, L.P.*, No. 10-40749, 2010 WL 3516171, at *13 (Bankr. E.D. Texas Sept. 3, 2010) .... 20
*In re Walden*, 781 F.2d 1121 (5th Cir. 1986) .... 20
*Wilk Auslander LLP v. Murray (In re Murray)*, 900 F.3d 53 (2nd Cir. 2018) .... 28
*Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770 (S.D. Tex. 2007) .... 22

**STATUTES**

11 U.S.C § 303(h)(1) .... 17
11 U.S.C. § 101(10)(A) .... 11
11 U.S.C. § 1141(d)(3)) .... 28
11 U.S.C. § 303(b) .... 13
11 U.S.C. § 303(e) .... 26
11 U.S.C. § 303(i)(2) .... 21
11 U.S.C. § 303(i)(l) .... 21
11 U.S.C. § 305(a) .... 17
11 U.S.C. § 707(a) .... 29
FED. R. CIV. P. 12(b) .... 12
TEX. BUS. ORGS. CODE §9.001 .... 12

**OTHER AUTHORITIES**

2 COLLIER ON BANKRUPTCY ¶ 303.15, at 76 (15th ed. 1988) .... 13
2 COLLIER ON BANKRUPTCY 303.14 (16th rev. ed. 2013) .... 12
2 COLLIER ON BANKRUPTCY ¶ 305.02[2][d] (16th rev. ed. 2013) .... 18
2 *Collier on Bankruptcy* f 305.02[c], [d] at p. 305-9 (16th ed.) .... 27
30 Cong. Rec. S7618 (daily ed. June 19, 1984) .... 9
H.R. Rep. No. 95–595, at 323 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6279; S. Rep. No. 95–989, at 33 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5819)) .... 26

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COME NOW WALL007 LLC, WALL009 LLC, WALL010 LLC, WALL011 LLC, WALL012 LLC, WALL016 LLC, and WALL017 LLC, the Alleged Debtors in the above-captioned proceedings (collectively the "**Alleged Debtors**" or individually "WALL #"), by and through their undersigned counsel, hereby move for dismissal of the involuntary petitions [Case No. 20-31131-hdh7, Docket No. 1; Case No. 20-31133-sgj7, Docket No. 1; Case No. 20-31134-bjh7, Docket No. 1; Case No. 20-31135-sgj7, Docket No. 1; Case No. 20-31136-hdh7, Docket No. 1; Case No. 20-31138-bjh7, Docket No. 1; Case No. 20-31139-hdh7, Docket No. 1] (collectively the "**Involuntary Petitions**") filed against them by Jun Li, Yunding Kang, Cunxiang Ji, Jin Wang, Peng Guo, Lin Zhou, Qu Chen, Kai Tian, Yijing Wu, Xuegeng Gong, Jin Wang, Weijia Kong, Heng Zhang, Hong Guo, Pei Guan, Yue Xu, Mai Ye, Chenchen Jiang, Qiuying Li, Ruinian Wu, Lin Zhou, Liying Yang, Yan Zhang, Wenjun Wang, Lan Ji, Ying Zhou, Lin Li, Li Jiang, Rufeng Ding, Cunxiang Ji, Lin Gao, Qiao Qin, Yue Zhang, Xiaodong Hao, Tianqing Song, Li Jiang, Weisi Wang, Xiaoquan Dai, Feng Yan, Heng Zhang, Ou Jiang, Jinzhe Wu, Yadan Liu, Wanwan Li, Wenjuan Yin, Jiancheng Chen, Yi Tang, Ying Zhang, Pengfei Dong, Kangying Mao, Yijing Wu, Li Jiang, Qin Chu, Yulan Chen, Sicheng Zhan, Pei Guan, Jingqiu Tang, Di Tang, Jun Zeng, Kui Wang, Yue Zhang, Jun Wang, Xiaomin Fan, Di Tang, Jialin Hu, Qin Chu, Jiaxiang Lu, Fuqing Chen, Hanjiang Fu, Aiguo Luo, Fang Ding, Xiangdong Zhu, Wai Ying, Yuan Yuan, Chao Xu, Guoqin Zhou, Yijing Wu, (collectively, the "**Petitioners**") on April 8, 2020 (the "**Involuntary Petition Date**"), and now jointly administered in the above captioned Chapter 7 case, (the "**Involuntary Case**").[1] In support of this Motion, Alleged Debtors respectfully state as follows:

---

1 In support of the facts contained herein, the Alleged Debtors will present witnesses and exhibits at the hearing on this Motion.

## I. PRELIMINARY STATEMENT

1. This Chapter 7 case and the related cases were filed by Petitioners as a litigation tactic, as a debt collection tactic, and an attempt at forum shopping in the context of a state court dispute with the Alleged Debtors. That conduct is a clear abuse of the Bankruptcy Code's involuntary provisions to gain a tactical advantage in the pending litigation and in the disputes between Petitioners and the Alleged Debtors.

2. As an initial matter, dismissal of the Involuntary Petitions is warranted (i) because the jurisdictional requirements of Section 303 of the Bankruptcy Code have been disregarded; (ii) Michel Fu ("Fu"), who was doing business as Silverland Financial Ltd. ("Silverland") and Platinum Investment Corporation ("PIC"), is the real party-in-interest and he is using the Petitioners as his pawns in this proceeding; and (iii) because the Alleged Debtors have an ongoing dispute with each Petitioner– meaning they do not meet the requirements of Section 303(b)(1) of the Bankruptcy Code. Further the Alleged Debtors contend that they are generally paying their undisputed noncontingent and liquidated debts as they come due. The claims being asserted by the Petitioners are subject to bona fide dispute as to liability and amount.

3. In addition, the underlying subject matter of this case pertains to a dispute currently pending in a non-bankruptcy forum, as Cause No. DC-19-18361 before the District Court of Dallas County for the 44th Judicial District (the "**State Court**") and the Alleged Debtors involved therein have already devoted substantial judicial resources to this dispute and it is an available forum for resolution of all underlying disputes between Alleged Debtors and Petitioners.

4. Finally, Petitioners' actions reek of bad faith and that bad faith should be met with serious consequences. As set forth below, those consequences should include not only dismissal of the Involuntary Cases but also an award of damages (including punitive damages) in Alleged

Debtors' favor under Section 303(i) of the Bankruptcy Code as well as costs and attorney's fees. Regardless of whether the Petitioners' actions are viewed by the Court as constituting bad faith, however, the reality remains that these cases are (i) an inefficient and improper vehicle for resolving the pending disputes between Petitioners' and the Alleged Debtors; and (ii) an improper venue for debt collection.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.[2] This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6. This Court issued summons on each Alleged Debtor on April 10, 2020. Petitioners allege that they served each Alleged Debtor via First Class US Mail on April 14, 2020.[3] *See* FED. R. BANK. P. 1010(a), 7004(b)(3). Pursuant to FED. R. BANK. P. 1011(b) and 9006(f), the Alleged Debtors are afforded twenty-four (24) days to answer or otherwise plead after service by mail, with the deadline thereof being May 8, 2020. Alleged Debtors file this Motion before such deadline.

7. The statutory predicates for the relief sought herein are Sections 303(b), 303(i) and 305(a) of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1011 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE (the "**Bankruptcy Rules**").

## III. BACKGROUND

8. The Alleged Debtors are Texas limited liability companies formed for the purpose of acquiring land in order to construct horizontal improvements thereon as necessary to create a

[2] Upon information and belief, all Petitioners are Chinese nationals. Despite diligent research, Alleged Debtors have not found law pertinent to their standing to bring an involuntary preceding in United States Courts.

[3] Due to COVID-19 related office closures, Alleged Debtors have not been able to confirm receipt of summons at their business office addresses.

subdivision – streets, water utilities, sewers, sidewalks, and residential lots – with the objective of selling residential lots to home builders over a period of time.

9. Each Alleged Debtor entered into a pooled loan agreement with their respective Petitioners through their designated agent Fu, who was doing business as Silverland and PIC (collectively referred to herein as "**Fu**" or collectively the "**Fu Entities**"). Fu located the Petitioners, engaged them to provide **co-lending** through the Fu Entities, organized the transfer of funds, and acted as an agent on behalf of all the co-lending Petitioners. The Fu Entities have asserted they are the agent for the co-lenders in the pooled loan agreements and instruct that the agent shall serve as the administrator on behalf of the co-lenders, and direct all payments be made to the agent. In short, the pooled loans were part of a single partnership amongst the Petitioners as Co-Lenders with Fu and/or his entities as the unified, designated agent. These facts are important because they show that the Co-Lenders along with Fu are a single alleged creditor entity rather than separate entities.

10. The State Court Case was filed on November 15, 2019, for the purpose of debt collection. The Defendants therein filed an answer, a plea in abatement, a motion to dismiss pursuant to Tex. R. Civ. P. 91a, and an anti-SLAPP motion.[4] Instead of responding to these pleadings, Petitioners opted to forum shop and file this involuntary bankruptcy case. The *Plaintiffs' Original Petition* in the State Court Case is salacious and spurious, and nothing more than a shakedown led by Fu to cover for unrelated failed business ventures of Silverland and PIC. PIC and Silverland have asserted entitlement to fees that were not owed, shared confidential information, spread rumors and false information, and defamed the Alleged Debtors to other

[4] All Alleged Debtors had intended, prior to the filing of this case, to consolidate proceedings by joining in and filing permissive counterclaims and third-party claims.

lenders and co-lenders in a concerted and calculated effort to pressure the Alleged Debtors into submission. This involuntary bankruptcy case is but another litigation tactic targeted at applying such pressure – and wrought out of anticipated negative orders in the State Court Case.

11. In addition, the Alleged Debtors assert that the Petitioners have failed to comply with their loan agreements by failing to tender the loaned amounts to the Alleged Debtors either personally or traced through payments by the Fu Entities or Fu. Alleged Debtors further assert that no promissory notes were ever executed as contemplated by the loan agreements. The financial practices of Fu and the Petitioners – as the Alleged Debtors now understand them – were misleading, potentially fraudulent, and potentially violative of both Chinese and U.S. laws. In fact, the Alleged Debtors' attempt to take corrective actions and calling these financial practices into questions is what initiated this ongoing dispute. As such, the liability and amounts owed to the Petitioners remain hotly contested and in dispute.

12. The Alleged Debtors assert that Fu, through the Fu Entities, has continuously mislead the Alleged Debtors and the Petitioners, breached obligations and agreements, interfered and obstructed the Alleged Debtors in performing their obligations and efforts to even remit payments to the Petitioners.

13. Upon information and belief, the Alleged Debtors assert that some or all of named Petitioners are: (i) not voluntarily participating in this Bankruptcy Case; (ii) not aware that the Involuntary Petition was filed in their name; and/or (iii) not real persons. The docu-signed documents that make up the Involuntary Petitions cast serious doubt on their authenticity. Further many of the Petitioners who reside in China have no contact information. It may become impossible to learn whether these persons actually exist or exist merely as masks for Fu or others.

14. For these reasons, the Alleged Debtors assert herein that there exists an ongoing bona fide dispute as to the liabilities and amounts owed that is more efficiently and properly heard before the State Court. Petitioners' claims are not liquidated and are disputed.

## IV. RELIEF REQUESTED AND SUPPORT THEREFORE

15. Alleged Debtors seek entry of an order, substantially in the form attached hereto as Exhibit A: (a) substituting Fu d/b/a Silverland and PIC as the real party in interest; (b) dismissing the Involuntary Petitions because Petitioners cannot satisfy the requirements under Section 303 of the Bankruptcy Code; (c) finding that cause exists, based on the bad faith in filing the Involuntary Petitions, to warrant dismissal; and (d) entering an award of compensatory and punitive damages for costs and recovery of attorneys' fees against the Petitioners and Fu because the Involuntary Petitions were filed in bad faith.

16. The filing of an involuntary petition is considered a "particularly severe remedy." *Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)*, 741 F.3d 651, 655 (5th Cir. 2014). In recognition of this fact, "Congress limited the circumstances in which creditors may force a debtor into such a proceeding." *Id.* (citing, *inter alia*, 30 Cong. Rec. S7618 (daily ed. June 19, 1984)); *see In re Landmark Distribs., Inc.*, 189 B.R. 290, 306 (Bankr. D.N.J. 1995) ("The filing of an involuntary petition by a creditor must be carefully scrutinized by the Court because such an action is extreme in nature and carries with it serious consequences to the alleged debtor, examples of which include loss of credit standing, interference with general business affairs and public embarrassment.") (citations omitted). Congress created the Bankruptcy Code to serve "as a shield for debtors, not a sword for creditors," *In re R.N. Salem Corp.*, 29 B.R. 424, 429 (S.D. Ohio 1983), and even the good-faith filing of an involuntary petition creates onerous circumstances for an alleged debtor. *Schmid v. Yorke* (*In re Reid*), 773 F.2d 945,

946 (7th Cir. 1985) (the filing of an involuntary petition is "an extreme remedy with serious consequences to the alleged debtor") (citations omitted).

17. Where, as here, an involuntary petition does not and cannot meet the statutory requirements for commencing an involuntary case under Section 303 of the Bankruptcy Code, the petition should be dismissed. Here, the Involuntary Petitions were not commenced by the requisite number of petitioning creditors holding non-contingent, liquidated and undisputed claims as required by the Bankruptcy Code. Moreover, as demonstrated herein, the Involuntary Petitions were not filed to promote the interests of the Alleged Debtors' creditors generally; to the contrary, the Involuntary Petitions are defective and were filed in bad faith, requiring their dismissal.

**A. Michael Fu d/b/a Silverland and PIC is the Real Party in Interest and Should be Substituted for the Petitioners**

18. A "claim" is defined by 11 U.S.C. § 101(4) as either a "right to payment" or a "right to an equitable remedy[.]" A person, as defined under 11 U.S.C. § 101(30) to include partnership, is a "creditor" only if it "has a claim against the debtor that arose at the time of or before the order for relief." 11 U.S.C. § 101(10)(A). Where another person has been granted the right to payment or enforcement of a debt, that person is the real party in interest. *See generally, In re Alcide*, 450 B.R. 526, 539 (Bankr. E.D. Pa. 2011).

19. Here, the Alleged Debtors entered into a pool of loan agreements organized by Fu, doing business as the Fu Entities. In those pooled loan agreements, the Fu Entities – named as Agent – were delegated by the Petitioners (i) their right to receive all payments; and (ii) the right to administer the pooled loans on behalf of the co-lenders. There is nothing present in the record to indicate a cancellation of any such delegations. Therefore, under the Bankruptcy Code, the Fu Entities would be the only ones holding claims related to the pooled loan agreements.

20. However, upon information and belief, the Alleged Debtors assert that neither Silverland nor PIC are validly formed separate legal entities, but instead lawfully are only assumed names for Fu. In the State Court Case, Silverland alleged that it is an entity formed under the laws of the Marshall Islands and PIC alleges that it is a foreign corporation incorporated under the laws of China. Upon investigation, Silverland is not incorporated in the Marshall Islands and PIC is not actually a Chinese entity, but rather a suspended California corporation. Moreover, neither Silverland or PIC are entities lawfully existing or properly registered to transact business in the State of Texas. *See* TEX. BUS. ORGS. CODE §9.001. Therefore, both Silverland and PIC are merely assumed names under which Fu has been transacting business with the Alleged Debtors and the Petitioners. Fu – alone – is the only person holding a claim, and the real party in interest herein.

21. Upon information and belief, the Alleged Debtors additionally assert that Fu is behind the filing of the Involuntary Petitions and paid all costs for the filing of same. The Alleged Debtors require discovery on these matters to support their present contentions.

22. For the reasons stated above, the Alleged Debtors respectfully request that Fu be substituted as the real party in interest in place of the Petitioners. This substitution may become particularly relevant when these cases are dismissed and damages and fees and sought.

**B. The Involuntary Petitions Should be Dismissed Under 11 U.S.C. § 303(b)(1) Because There are an Insufficient Number of Petitioners to Support the Filing.**

23. Bankruptcy Rule 1011 governs the procedure for responding to an involuntary petition. That Rule provides that all defenses and objections to an involuntary petition must be presented in the manner prescribed by FED. R. CIV. P. 12 of. FED. R. BANKR. P. 1011(b). That Rule allows certain defenses to be asserted in the form of a pre-answer motion. FED. R. CIV. P. 12(b).

24. As a threshold matter, Alleged Debtors seek dismissal of the Involuntary Petitions because they are not supported by the requisite number and quality of petitioning creditors needed

to commence an involuntary Chapter 7 case under Section 303 of the Bankruptcy Code. Section 303(b)(1) of the Bankruptcy Code which states, in relevant part:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724 (a) of this title, by one or more of such holders that hold in the aggregate at least $15,775 of such claims . . . . 11 U.S.C. § 303(b).

25. Section 303(b) contains "very specific requirements concerning the number of entities that are necessary to commence an involuntary filing." 2 COLLIER ON BANKRUPTCY 303.14 (16th rev. ed. 2013). Those requirements are based on the policy of preventing one or more "recalcitrant creditors" from filing an involuntary case to harass a debtor. *Id.*

26. Perhaps the most basic of all requirements is that Section 303(b)(l) requires that when a debtor has twelve or more creditors, an involuntary case may be commenced only by three or more entities. *See In re Tichy Elec. Co., Inc.*, 332 B.R. 364, 372-73 (Bankr. N.D. Iowa 2005) (citations omitted); *Sipple v. Atwood (In re Atwood)*, 124 B.R. 402, 406 (S.D. Ga. 1991) ("If there are twelve or more qualifying claims, excluding voidable claims, the debtor cannot be forced into involuntary bankruptcy by fewer than three of the qualifying creditors."). Where a debtor has twelve or more creditors and there are less than three petitioning creditors, the case must be dismissed—Section 303(b)(l) leaves no room for Court discretion.

27. The Petitioners have the burden of demonstrating that they have satisfied the numerosity requirement under Section 303(b) of the Bankruptcy Code. *Pleas Doyle & Assocs. v. James Plaza Joint Venture (In re James Plaza Joint Venture)*, 67 B.R. 445, 448 (Bankr. S.D. Tex. 1986) ("It is plaintiffs' burden to demonstrate the number of creditors of [the] debtor's estate."); *In re Charon*, 94 B.R. 403, 405-06 (Bankr. E.D. Va. 1988) (petitioner has "burden of proving that it satisfied the jurisdictional requirements of § 303(b)"); 2 COLLIER ON BANKRUPTCY ¶ 303.15, at 76 (15th ed. 1988) ("When fewer than three creditors file an involuntary petition, the alleged debtor has the burden to raise the issue that it has 12 or more creditors by filing a list pursuant to Bankruptcy Rule 1003(b). The petitioning creditor then has the burden to show that the alleged debtor actually has fewer than 12."). Petitioners cannot do so.

28. Here, it is beyond dispute that each Alleged Debtor has twelve or more creditors. Alleged Debtors will each file a statement pursuant to Bankruptcy Rule 1003(b) listing such creditors. Thus, each Alleged Debtor has more than twelve creditors, making clear that three petitioning creditors are required to force Alleged Debtors into bankruptcy pursuant to Section 303(b)(1).

29. As discussed in Section IV(A) hereinabove, the Petitioners in this case are in actuality only one (1) creditor, not more than three (3) as required. Fu has continuously acted on behalf of the Petitioners as one creditor, being pooled investors therein. The Petitioners fail to demonstrate any basis that now Fu's agency and sole right to receive payments should be disregarded and they should be treated as individuals, when prior to the filing the Involuntary Petitions they had acted as one partnership body. For such reasons, the Petitioners have failed to meet the numerosity requirement.

30. Based on the foregoing, the Involuntary Petitions lack the statutorily required number of petitioning creditors and should be dismissed.

### C. The Involuntary Petitions Should be Dismissed Under 11 U.S.C. § 303(b)(1) Because the Claims are Subject to Bona Fide Disputes, Contingent, and Disputed

31. Alleged Debtors further seek dismissal of the Involuntary Petitions because the Petitioners' claims are subject to bona fide disputes, contingent, and in all manner unliquidated.

32. A bona fide dispute exists pursuant to 11 U.S.C. § 303(b) under Fifth Circuit precedent, as an objective standard as articulated:

> [T]he petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the [alleged] debtor to present evidence demonstrating that a bona fide dispute does exist. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists. Finally, because the determination as to whether a dispute is bona fide will often depend ... upon an assessment of witnesses' credibilities and other factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous. *In re Sims*, 994 F.2d 210, 221 (5th Cir. 1993) (quoting *In re Rimell*, 946 F.2d at 1365 (citations omitted)).

33. "[T]he existence of a bona fide dispute must be determined as of the date the petition was filed." *In re Norris*, 114 F.3d 1182, 1997 WL 256808, at *5 (5th Cir. 1997). "Post-BAPCPA cases have recognized that a bona fide dispute merely as to the amount of the debt is now sufficient to deny a creditor standing to bring an involuntary petition." *In re Ebackpack*, 605 B.R. 126, 132 (Bankr. N.D. Tex. 2019). Irrespective of numerosity issues, each of the Petitioners bear the burden of showing that they hold a non-contingent claim, not subject to a bona fide dispute as to liability or amount.

34. "Bankruptcy Courts routinely consider the evidence and character of pending but unresolved litigation as evidence of a bona fide dispute." *In re Hunt*, No. 18-7237, 2019 U.S. Dist. LEXIS 24987, at *7-9 (E.D. La. 2019) (quoting *In re Green Hills Dev. Co.*, 741 F.3d 651, 659 (5th Cir. 2014) (internal citations omitted).

35. Here, there is unresolved pending litigation that the Petitioners are attempting to short-circuit prior to impending, unfavorable orders therein. The Alleged Debtors dispute the liability and the amounts therein. Moreover, the Alleged Debtors therein have similar issues as here. As detailed above, there are true disputes as to the tendering of loaned amounts, whether an event of default has actually occurred, fraudulent and potentially illegal financial practices by Petitioners and/or Fu, and identification of the co-lenders. At the time of the Involuntary Petitions there was no clear result as to the litigation in the State Court case or the disputes at hand. *See In re Ebackpack*, 605 B.R. at 135. In addition, the Alleged Debtors dispute that (i) there are promissory notes supporting Petitioners' claims; (ii) the pooled loans were ever fully funded; and (iii) the Petitioners actually funded the loans or were they funded by some yet undisclosed persons.

36. For such reasons, the Alleged Debtors assert that, under the applicable legal analysis, that all claims asserted by Petitioners are subject to bona fide disputes, and therefore Petitioners lack standing under Section 303(b) to bring these Involuntary Petitions – and they should be dismissed.

### D. This Court Should Dismiss the Involuntary Petitions Under 11 U.S.C. § 303(h) Because the Alleged Debtors are Generally Paying their Respective Debts

37. The Court should dismiss the Involuntary Petitions under Section 303(h) or refrain from entering an order for relief in the Involuntary Cases. Pursuant to Section 303(h):

> the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if . . . the debtor is generally not

paying such debtor's debts as such debts become due unless such debts are subject of a bona fide dispute as to liability or amount. 11 U.S.C. § 303(h)(1).

38. As set forth herein, the alleged debts are in fact subject to bona fide dispute as to liability and amount and are unliquidated. It is not clear from the agreement when and where any amounts are owed. Moreover, the Alleged Debtors are also generally paying their respective debts as they become due and owing. Prior to the filing of the Involuntary Petitions, the Alleged Debtors made substantive efforts to arrange payment to the Petitioners. Alleged Debtors were impaired in doing so by Fu and the Fu Entities for reasons including their failure to provide necessary payment instructions and the outright unwillingness by Fu and the Fu Entities to comply with United States tax withholding laws.

39. Section 303(h)(1) operates as a safeguard against entry of an order of relief where an alleged debtor is generally paying its debt, as is the case here. For such reasons, the Alleged Debtors assert that these Involuntary Cases should be dismissed.

**E. This Court Should Dismiss the Involuntary Petitions Under 11 U.S.C. § 305(a) Because They are not in the Best Interests of Alleged Debtor and Its Creditors**

40. The Court should dismiss the Involuntary Petitions under Section 305(a) as (i) the cases are not in the best interests of Alleged Debtors and their creditors; and (ii) the Petitioners have adequate remedies under state law. *See In re Kass*, 114 B.R. 308, 309 (Bankr. S.D. Fla. 1990); *In re Frailey*, 144 B.R. 972 (Bank. W.D. Penn. 1992). Section 305(a) of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if (1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . . ." 11 U.S.C. § 305(a).

41. The movant bears the burden of demonstrating that the interests of creditors and the debtor would benefit from dismissal. *In re Amc Inv'rs, LLC*, 406 B.R. 478, 488 (Bankr. D. Del.

2009). Section 305(a)(1) of the Bankruptcy Code applies to involuntary petitions. *See, e.g., In re CorrLine Int'l, LLC*, 516 B.R. 106, 140 (Bankr. S.D. Tex. 2014); *In re Colonial Ford, Inc.*, 24 B.R. 1014, 1020 (Bankr. Utah 1982) ("Section 305(a)(l) applies in any case, voluntary or involuntary, 'under this title.'").

42. Courts consider numerous factors to gauge the overall best interests of the creditors and the debtor, including:

a. the economy and efficiency of administration;

b. whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

c. whether federal proceedings are necessary to reach a just and equitable solution;

d. whether there is an alternative means of achieving an equitable distribution of assets;

e. whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

f. whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

g. the purpose for which bankruptcy jurisdiction has been sought.

*AMC Investors*, 406 B.R. at 488 (citing, *inter alia*, *In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002) and *In re 801 S. Wells St. Ltd. P'ship*, 192 B.R. 718, 723 (Bankr. N.D. Ill. 1996)) (noting that "[w]hile all factors are considered, they are not given equal weight in each case, nor should the court conduct a strict balancing").

43. "Dismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor." 2 COLLIER ON BANKRUPTCY ¶ 305.02[2][d] (16th rev. ed. 2013); *see In re 1701 Commerce, LLC*, 477 B.R. 652, 658 n.20 (Bankr. N.D. Tex. 2012) (citations omitted) ("Similar inter-lender and two-party

disputes have been dismissed for cause because of such bad faith.”). Courts generally will dismiss the case or abstain in two-party disputes where relief is available in a non-bankruptcy forum. *AMC Investors*, 406 B.R. at 488 (“Courts generally abstain in two-party disputes where relief is available in a non-bankruptcy forum. Resolution of these disputes has the potential to transform the bankruptcy process into a collections device, which it is not.”) (citing *In re Mountain Dairies*, 372 B.R. at 634-35; *In re Axi Indus., Inc*., 127 B.R. 482, 484 (S.D. Fla. 1991) (“The bankruptcy courts generally grant motions to abstain in two-party disputes where the petitioner can obtain adequate relief in a non-bankruptcy forum. Courts consider the motivation of the petitioning creditor as a factor in making such a determination. It is not appropriate to file an involuntary petition in an effort to gain control of the debtor's business.”)).

44. The principle that bankruptcy courts are not a proper vehicle to litigate two-party disputes applies equally to voluntary and involuntary bankruptcy filings. Indeed, the court in *In re ELRS Loss Mitigation, LLC*, 325 B.R. 604 (Bankr. N.D. Okla. 2005), stated as follows:

> [W]here a voluntary petition could be dismissed on the basis of a lack of good faith were the debtor to seek resolution of a two-party dispute in bankruptcy court, an involuntary case should be dismissed where similar motivation is found on the part of the petitioning creditors. This Court has not hesitated to dismiss a bankruptcy brought voluntarily by a debtor where the case represents a two-party dispute. What is good for the goose is good for the gander. If a debtor may not seek to resolve its two-party dispute under the auspices of the bankruptcy court, there is no reason to allow a creditor to bring its two-party claim to the same court through the filing of an involuntary petition.”). *Id.* at 633 (citations omitted).

45. Courts have dismissed involuntary petitions because bankruptcy courts are not intended to be a forum for trying isolated disputes, nor should creditors be allowed to use the bankruptcy court as a collection device. *See In re Nar-Jor Enters. Corp.*, 6 B.R. 584, 586 (Bankr. S.D. Fla. 1980) (“There are courts of general jurisdiction to which both parties hereto can be

summoned and in which the issues between them can be litigated. The Bankruptcy Court was not designed or intended to be the forum for trying isolated disputed claims. Such a disputed claim standing alone should not be the basis of an involuntary petition . . . . ”).

46. Here, it is clear that Petitioners filed the Involuntary Petitions as in a debt collection effort and as a litigation tactic in what is essentially a two-party dispute, presumably in a desperate attempt to move away from the State Court Case. *See In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 337-38 (3d Cir. 2015) (“Courts routinely find it improper for creditors to use the bankruptcy courts to gain a personal advantage in other pending actions or as a debt collection device.”). These cases have no bankruptcy-related purpose and no other creditors have joined in.

47. Such imposed bankruptcy will assuredly have a dramatically negative impact on the Alleged Debtors’ ongoing business operations and ability to satisfy their other obligations. As a result, the Alleged Debtors’ other creditors stand to be damaged by having their claims reduced or erased through the unnecessary imposition of expenses and delays caused by this proceeding.

48. There is no basis to find that the Involuntary Petitions were validly filed or that it is in the best interest of the Alleged Debtors and their creditors. Based on the foregoing, dismissal under Section 305(a) is appropriate.

**F. An Award of Compensatory and Punitive Damages and Recovery of Attorneys’ Fees is Appropriate Because the Involuntary Petitions Were Filed in Bad Faith**

49. This Court should impose sanctions against Petitioners and Fu pursuant to Section 303(i) of the Bankruptcy Code for the bad faith filing of the Involuntary Petitions. Section 303(i) provides for an alleged debtor’s recovery of costs incurred in defending against petitioning creditors:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this section, the court may grant

> judgment…against the petitioners and in favor of the debtor for . . . (A) costs; or (B) a reasonably attorney's fee. 11 U.S.C. § 303(i)(l).

50. Section 303(i) further provides that a court may grant judgment:

> against any petition that filed the petition in *bad faith*, for . . . (A) any damages proximately caused by such filing; or (B) punitive damages. 11 U.S.C. § 303(i)(2) (emphasis added).

51. In addition, an allegation of bankruptcy invokes remedies not available to any ordinary debt collection procedures and should not be invoked unadvisedly and contrary to statutory right. *In re Walden*, 781 F.2d 1121, 1123 (5th Cir. 1986). Determination of bad faith filing of an involuntary petition goes to the "totality of the circumstances." *In re TRED Holdings, L.P.*, No. 10-40749, 2010 WL 3516171, at *13 (Bankr. E.D. Texas Sept. 3, 2010). The existence of a two-party dispute is a factor repeatedly considered in such determination, weighing in favor of dismissal for bad faith. *In re Murray*, 543 B.R. 484, 493 (Bankr. S.D.N.Y. 2016). Likewise, the bankruptcy court is not a collection agency. *Id.* at 494 (citing *In re Mountain Dairies, Inc.*, 372 B.R. 623 (Bankr. S.D.N.Y. 2007).

52. As to the totality of the circumstances supporting a finding of bad faith, the Alleged Debtors assert (i) this is a two-party dispute with state court remedies available to all of the Petitioners; (ii) this is, at its core, a collection effort by Petitioners; (iii) there is no imminent threat to the Petitioners' rights or ability to collect any indebtedness; and (iv) there will be considerable and unnecessary interruption and expense caused by the Involuntary Petitions, which will result in a diminution in value of the Alleged Debtors' enterprises and damages to their creditors. The Alleged Debtors have already been damaged by the publicity that the filings caused.

53. Based on the below and foregoing, this Court should find these Bankruptcy Cases to be filed in bad faith and this Court should impose sanctions against Petitioners to compensate Alleged Debtors for defending these bad faith filings, including payments covering Alleged

Debtors' reasonable attorneys' fees, compensatory costs and punitive damages in an amount to be determined by the Court.

**i. The Court Should Award Costs and Reasonable Attorneys' Fees.**

54. Courts in the Northern District of Texas apply a totality of the circumstances approach to requests for costs and fees upon the dismissal of an involuntary petition. *In re Synergistic Techs., Inc.*, 07-31733-SGJ-7, 2007 WL 2264700, at *5 (Bankr. N.D. Tex. Aug. 6, 2007); *In re Allied Riser Commc'ns Corp.*, 283 B.R. 420, 423-24 (Bankr. N.D. Tex. 2002); *cf. In re Clean Fuel Techs. II, LLC*, 544 B.R. 591, 601 (Bankr. W.D. Tex. 2016) (noting that the majority view is that a rebuttable presumption exists in favor of fees for a successful would-be debtor upon the dismissal of an involuntary petition and adopting that presumption); *In re Funnel Sci. Internet Mktg., LLC*, 551 B.R. 262, 274 (E.D. Tex. 2016) (discussing the rebuttable presumption and stating that "[t]he Court will assume without deciding that such a rebuttable presumption applies here").

55. In *Landmark Distribs.*, the court, conducting a totality of the circumstances analysis, awarded costs and attorneys' fees incurred in conjunction with an involuntary petition as damages, in an amount to be determined, based on its conclusion that the filing of that petition was "unreasonable and manifested a callous disregard of the adverse impact of the filing on [the debtor]." 189 B.R. at 307-08. The court reached that finding, highlighting that those petitioning creditors' claims were the subject of a "legitimate business dispute." *Id.*

56. Here, Petitioners and Fu's filing of the Involuntary Petitions likewise were unreasonable. Petitioners and/or Fu had the opportunity to conduct discovery of Alleged Debtors through the State Court Case or other state court forum and, in fact, received financial information in the context of the pending litigation.

57. As a result of Petitioners and Fu's bad faith, Alleged Debtors have incurred significant costs and legal expenses in connection with its defense of these frivolous petitions. Accordingly, Alleged Debtors are entitled to compensation.

**ii. The Court Also Should Award Compensatory and Punitive Damages Because the Involuntary Petitions Were Filed in Bad Faith.**

58. Section 303 gives a bankruptcy court discretion to order relief against a debtor who is not paying its debts. *In re Bates*, 545 B.R. 183, 192 (Bankr. W.D. Tex. 2016) (citing *Forever Green Athletic*, 804 F.3d at 336). However, "even where the statutory criteria for commencing an involuntary suit are satisfied and where the putative debtor is not paying its debts as they become due, bad faith on the part of petitioning creditors provides a basis for dismissing an involuntary bankruptcy petition." *Id.* Pursuant to Section 303(i)(2), bad faith is also a consideration in awarding compensatory and punitive damages.

59. Although the Bankruptcy Code does not define "bad faith" in determining whether a Chapter 7 case has been filed in bad faith, courts consider, among other factors, whether the case was filed as a litigation tactic in a two-party dispute. *In re Tichy Elec. Co.*, 332 B.R. at 373; *In re 1701 Commerce, LLC*, 477 B.R. at 658 n.20 (Bankr. N.D. Tex. 2012) (citations omitted) ("Similar inter-lender and two-party disputes have been dismissed for cause because of such bad faith."); *In re Metrogate, LLC*, Case No. 15-12593, 2017 WL 3150177, at * 13 (Bankr. D. Del. May 26, 2016) ("Although the Petitioning Creditors met the statutory numerosity requirement, the dispute appears to be functionally between two parties. Additionally, there appears to be a single recalcitrant creditor who is more concerned with a collection action than with the alleged debtor's well-being as a going concern."); *Wolinsky v. Oak Tree Imaging, LP*, 362 B.R. 770, 781 (S.D. Tex. 2007) (stating that "[t]he role of the bankruptcy courts is not to adjudicate two-party disputes . . . ") (citing *Am. Telecom Corp. v. Siemens Info. & Commc'ns Network, Inc.*, 04 C 8053, 2005 WL

5705113, at *4 (N.D. Ill. Sept. 7, 2005) (affirming the dismissal of a Chapter 7 case where the case has "no discernable relationship to any true bankruptcy policies" and has "been used as a litigation tactic to frustrate and delay the debtor's opponent in a two-party dispute")).

60. For example, the Third Circuit, in analyzing whether an involuntary petition had been filed in bad faith, under a totality of the circumstances approach, considered factors such as "whether: the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing." *Forever Green Athletic*, 804 F.3d at 336.

61. Here, each Involuntary Petition satisfies most if not all of these criteria. First, the Involuntary Petitions fail the numerosity and lack of bona fide dispute requirements of Section 303(b) of the Bankruptcy Code. Second, Petitioners and Fu failed to make a reasonable inquiry into the facts and pertinent law, including the basic assessment of whether Alleged Debtors had further creditors. Third, Petitioners and Fu are attempting to use the bankruptcy process as a weapon without any other legitimate purpose. *See In re St. Marie Dev. Corp.*, 334 B.R. 663, 671 (Bankr. D. Mont. 2005) (bad faith exists when petitioning creditors file involuntary to protect their own interest and thereby gain disproportionate advantage); *In re Tichy Elec. Co.*, 332 B.R. at 377 (petitioning union trust funds filed in bad faith because they filed solely to collect debts owed to them: they used bankruptcy process both to obtain disproportionate advantage over all other

creditors and as a weapon to satisfy their claims); *In re Skyworks Ventures, Inc*., 431 B.R. 573, 579 (Bankr. D.N.J. 2010) (holding petitioner "did not have the interests of other creditors at heart. The petition was not filed in the traditional spirit of collective creditor action; rather, it was an attempt to force [alleged debtor] to settle the disputed claim of [petitioner]"); *In re Silverman,* 230 B.R. 46, 53 (Bankr. D.N.J. 1998) ("Filing an involuntary petition with the intent to gain a strategic advantage, rather than to protect one's interest relative to other creditors or to prevent dissipation of assets, constitutes an improper purpose"). Finally, Petitioners and Fu should not be permitted to burden this Court with a matter that can be extensively litigated in another forum. The State Court is well versed in the factual and legal issues underlying the disputes between the parties and there simply is no reason for these cases to continue where no legitimate bankruptcy purpose would be served.

62. Because there can be no genuine disagreement that Petitioners and Fu filed the Involuntary Petitions in bad faith, Alleged Debtors also are entitled to compensatory and punitive damages. As one court has stated:

> [I]n determining whether [a] creditor has exercised bad faith in filing an involuntary petition in bankruptcy, inquiry may be made into whether the petition was ill advised or improperly motivated, whether the petitioner took affirmative steps to ensure that the petition as filed was proper, and whether the petitioner made sufficient inquiry into the facts and law surrounding the case to determine the total number of claim holders.

*In re Elsub Corp.*, 66 B.R. 189, 196 (Bankr. D.N.J. 1986). The court "must consider whether a reasonable person in the position of the petitioning creditor would have initiated the bankruptcy proceeding" and ascertain "the subjective motivations of a petitioning creditor, which is analogous to the consideration of the ulterior motives of petitioning debtors in voluntary bankruptcy proceedings" *Id*

63. Petitioners and Fu's bad faith is manifest. This Court should award Alleged Debtors compensatory and punitive damages. The Involuntary Petitions were filed by too few petitioning creditors and there is no legitimate concern by Petitioners or Fu for the well-being of the Alleged Debtor's other creditors (none of which have joined the Involuntary Petitions), or for the fair distribution of Alleged Debtor's assets. Rather, Petitioners and Fu had one objective in mind – to gain an advantage in their dispute with Alleged Debtors at a critical time. *See Metrogate*, 2016 WL 3150177, at *17 (dismissing involuntary petition because, among other things, the timing of filing of the involuntary case was "telling" and "appear[ed] to be directly in response to pending state actions"). Petitioners and Fu abused the bankruptcy system and wasted the resources of the Court. Rather than condoning those bad faith efforts, the Court should impose sanctions on Petitioners and Fu in order to compensate Alleged Debtor for the damages suffered.[5]

**G. Petitioners Should be Required to Post a Bond.**

64. Petitioners and Fu should be required to post a bond to indemnify Alleged Debtors for such amounts as the Court may award under Section 303(i). *See* 11 U.S.C. § 303(e) (providing that, after notice and a hearing and for cause, a court may require a petitioner to post a bond to indemnify an alleged debtor for amounts assessed under 11 U.S.C. § 303(i)). The legislative history associated with Section 303(e) indicates that the "bonding requirement is designed to discourage frivolous petitions as well as spiteful petitions, based on a desire to embarrass the debtor or to put the debtor out of business without good cause." *McMillan v. Maestri (In re McMillan)*, 543 B.R. 808, 818 (Bankr. N.D. Tex. 2016) (internal marks omitted) (citing H.R. Rep. No. 95–595, at 323 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6279; S. Rep. No. 95–989, at 33 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5819)). The notice provided in connection with

[5] If the Court is inclined to impose sanctions, Alleged Debtors respectfully request an opportunity to submit evidence of fees, costs, and other damages at a later hearing.

the Motion is sufficient to satisfy the statutory "notice" requirement and the hearing on this Motion satisfies the "hearing" requirement.

65. Here, Petitioners and Fu are individual Chinese nationals who may not be easily reached for recovery of an award under Section 303(i) as China does not as a general practice recognize judgments of United States Courts. As demonstrated above, the Involuntary Petitions were filed in blatant disregard for the Bankruptcy Code and listed the petitioning persons individually in an effort to circumvent the same and obfuscate the truth that this is a two-party dispute. The Alleged Debtors assert that Petitioners filed these cases as purely a litigation and collection tactic.

66. Accordingly, a bond should be imposed in an amount to be determined by the Court based on evidence to be presented by Alleged Debtors, to secure satisfaction of the probable award of Alleged Debtors' accrued and continuing legal fees and related litigation costs.

**H. The Court Should Dismiss this Case under the Abstention Provisions of Under 11 U.S.C. § 305(a)**

67. Dismissal of this Bankruptcy Case in abstention is also appropriate under § 305(a) of the Bankruptcy Code.

68. Section 305, entitled "Abstention," provides, in part:

> The Court after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title at any time if-(1) the interests of creditors and debtor would be better served by such dismissal or suspension.

69. As noted by the Court in *In re Spade,* 258 B.R. 221, 228 (Bankr. D. Co. 2001), while the "language enacted by Congress in § 305 is rather simple," certain elements of this provision are not specifically defined. For example, the provision offers no guidance as to what

"interests of the creditors and the debtor" might include, nor does it specify the situations in which these interests would be "better served" by dismissal or suspension."

70. As noted in *Collier on Bankruptcy,* courts have abstained from hearing bankruptcy cases if the debtor's bankruptcy case is really a two party dispute. 2 *Collier on Bankruptcy* f 305.02[c], [d] at p. 305-9 (16th ed.).

71. In *In re Spade,* the Court looked to numerous factors to determine whether to dismiss a debtor's bankruptcy case under § 305(a), including: (i) whether another forum was available to protect the interests of parties or if there was already a pending proceeding in state court; (ii) the economy or efficiency of administration; and (iii) the prejudice to parties. *Id.* At 231. The aforementioned authority supports dismissal of this case under § 305(a).

72. The State Court provides a sufficient and appropriate venue to resolve these disputes in an efficient fashion. It is clearly an alternate forum; however, the Petitioners strategically chose to participate in that forum and then chose not to participate in that forum.

73. The Alleged Debtors are solvent and capable of satisfying their obligations through their continued operations, rendering a Chapter 7 inappropriate and not in the best interest of creditors. Finally, since the Alleged Debtors are limited liability companies, the Alleged Debtors are not entitled to a discharge of indebtedness against it upon the liquidation of their property (11 U.S.C. § 1141(d)(3)), nor will its equity holders necessarily receive a distribution on their equity interests. Hence, the continuation of the cases would not serve the interests of creditors or the Alleged Debtors. Accordingly, the Court should dismiss these cases under Bankruptcy Code § 305(a).

**I. The Court Should Dismiss these Cases for Cause under 11 U.S.C. § 707(a)**

74. Dismissal of these Bankruptcy Cases for cause is also appropriate under § 707(a) of the Bankruptcy Code.

75. Even if each Involuntary Petition meets the statutory requirements of Section 303, a bankruptcy court may still dismiss the case for cause under Section 707(a). *Wilk Auslander LLP v. Murray (In re Murray)*, 900 F.3d 53, 60 (2nd Cir. 2018). Courts must undergo a case-by-case analysis to determine what constitutes sufficient cause to warrant dismissal. *In re Dinova*, 212 B.R. 437, 442 (2nd Cir. BAP 1997). This determination of cause generally focuses on whether dismissal would in the best interests of all parties – including the debtor. *In re Smith*, 507 F.3d 64, 73 (2nd Cir. 2007).

76. Improper use of the bankruptcy system may constitute cause to dismiss. *Wilk Auslander*, 900 F.3d at 58. Factors considered favorable to dismissal for improper use of the bankruptcy system considered in *Wilk Auslander* and also present here include: (i) the bankruptcy court being yet a next step in an existing two-party dispute; (ii) this being a collection effort; (iii) lack of allegations of fraudulent transfers to be avoided; (iv) adequate remedies to enforce claims under non-bankruptcy law; (v) that no assets would be lost or dissipated by dismissal; and (vi) that the debtor neither wants, nor needs a bankruptcy discharge. *Id.*

77. Based on the totality of the issues raised in this Motion, cause exists to dismiss this Bankruptcy Case under Section 707(a) and the Alleged Debtors respectfully request such dismissal.

## V. NOTICE

78. Notice of this Motion has been given to: (i) the United States Trustee; (ii) Petitioners and their counsel, (iii) all parties who have filed notices of appearance in these cases; and (iv) all entities required to be served under the applicable provisions of the Bankruptcy Code,

the Bankruptcy Rules, and the Local Bankruptcy Rules. In light of the nature of the relief requested, Alleged Debtors submit that no further notice is required.

## VI. CONCLUSION

79. Accordingly, for the reasons set forth above, the Court should grant the Motion and (i) substitute Michael Fu for the Petitioners as the real party in interest; (ii) require Petitioners and Fu to post a bond under § 303(e); (iii) dismiss this case under either Bankruptcy Code § 303(b), § 305(a), or under § 707(a) for cause; (iv) award the Alleged Debtors compensatory and punitive damages, including reasonable and necessary attorneys' fees, under § 303(i) from all persons and entities involved in the filing and pursuit of the Involuntary Petitions, including without limitation the Petitioners, Silverland, PIC, and Fu; and (v) grant such other and further relief to which Alleged Debtors may show themselves entitled at law or in equity.

Dated: May 7, 2020.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Jeffery M. Veteto
State Bar No. 24098548
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Alleged Debtors

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 7, 2020, a true and correct copy of the foregoing *Brief in Support of Motions of Alleged Debtors to Dismiss Involuntary Petitions, Request for Substitution of Real Party-in-Interest, Request for Bond, and Request for Award of Fees, Costs and Damages or in the Alternative to Abstain Under Bankruptcy Code § 305* was served upon all parties that are registered to receive electronic service through the court's ECF notice system in the above cases.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer